# No. 13-769

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
_____

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

*v.*

WILLIAM A. TRUDEAU, JR.
Defendant-Appellant.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
No. 3:10CR234 (JCH)
_____

BRIEF OF NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS
AS *AMICUS CURIAE* IN SUPPORT OF APPELLANT
_____

| | |
|---|---|
| Richard D. Willstatter<br>Vice-Chair, *Amicus Curiae* Committee<br>National Association of Criminal<br>Defense Lawyers<br>200 Mamaroneck Avenue<br>Suite 605<br>White Plains, NY 10601<br>Tel.: (914) 948-5656<br>Fax: (914) 948-8730<br>Email: willstatter@msn.com | Timothy P. O'Toole<br>  *Counsel of Record*<br>Miller & Chevalier Chtd.<br>655 Fifteenth St., NW, Suite 900<br>Washington, DC 20005<br>Tel: (202) 626-5800<br>Fax.: (202) 626-5801<br>Email: totoole@milchev.com<br><br>Attorneys for *Amicus Curiae* National<br>Association of Criminal Defense Lawyers |

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that, in addition to those persons

and entities listed by Appellant, the following listed persons and entities as

described in Circuit Rule 29 have an interest in the outcome of this case. These

representations are made in order that the judges of this court may evaluate

possible disqualification or recusal:

*Amici Curiae:*

> National Association of Criminal Defense Lawyers
> 1660 L Street, NW
> 12th Floor
> Washington, DC 20036

Attorney of Record for *Amici Curiae:*

> Timothy P. O'Toole
> Miller & Chevalier Chartered
> 655 Fifteenth St., NW
> Suite 900
> Washington, DC 20005
> Tel: (202) 626-5552

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS ......................................................... i

INTEREST OF *AMICUS CURIAE*...........................................................................1

PRELIMINARY STATEMENT ...............................................................................2

SUMMARY OF THE ARGUMENT .......................................................................4

I.  THE SUPREME COURT'S *APPRENDI* JURISPRUDENCE, NOT ITS
    DECISION IN *WATTS,* GOVERNS SIXTH AMENDMENT QUESTIONS
    ABOUT THE PERMISSIBILITY OF JUDICIAL FACT-FINDING IN
    CRIMINAL CASES ........................................................................................9

II. APPLICATION OF THE CONTROLLING SIXTH
    AMENDMENT ANALYSIS FROM *APPRENDI* IS NOT
    FORECLOSED BY PRECEDENT................................................................15

III. THIS CASE PRESENTS AN EXCELLENT VEHICLE FOR
     REVISITING THIS COURT'S ACQUITTED CONDUCT
     JURISPRUDENCE BECAUSE IT HIGHLIGHTS THE
     IMPORTANT POLICY INTERESTS THAT ARE
     IMPLICATED WHEN A SENTENCE EFFECTIVELY
     NULLIFIES A JURY'S VERDICT ..............................................................18

CONCLUSION .....................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alleyne v. United States,*
    133 S. Ct. 2151 (2013)...................................................................*passim*

*Apprendi v. New Jersey,*
    530 U.S. 466 (2000)......................................................................*passim*

*Blakely v. Washington,*
    542 U.S. 296 (2004)......................................................................*passim*

*Cunningham v. California,*
    549 U.S. 270 (2007)...........................................................................11

*Gall v. United States,*
    552 U.S. 38 (2007)...............................................................................8

*Harris v. United States,*
    536 U.S. 545 (2002)......................................................................10, 12

*Jones v. United States,*
    526 U.S. 227 (1999).......................................................................7, 19

*McMillan v. Pennsylvania,*
    477 U.S. 79 (1986)..........................................................9, 10, 12, 17

*Rita v. United States,*
    551 U.S. 338 (2007)..............................................................................8

*Rodriguez de Quijas v. Shearson/American Express, Inc.,*
    490 U.S. 477 (1989)...........................................................................16

*Southern Union Co. v. United States,*
    132 S. Ct. 2344 (2012)...................................................................11, 12

*Union of Needletrades, Indus. & Textile Emps. v. INS,*
    336 F.3d 200 (2d Cir. 2003) ..............................................................17

*United States v. Ashworth,*
    139 F. App'x 525 (4th Cir. 2005) .......................................................15

iii

*United States v. Booker*,
543 U.S. 220 (2005)......................................................................*passim*

*United States v. Canania,*
532 F.3d 764 (8th Cir. 2008) ............................................19

*United States v. Coleman,*
370 F. Supp. 2d 661 (S.D. Ohio 2005), *aff'd in part, vacated in part,*
*and remanded on other grounds, United States v. Kaminski*,
501 F.3d 655 (6th Cir. 2007) ............................................20

*United States v. Dorcely*,
454 F.3d 366 (D.C. Cir. 2006)............................................15

*United States v. Frias*,
39 F.3d 391 (2d Cir. 1994) ............................................20

*United States v. Gobbi*,
471 F.3d 302 (1st Cir. 2006)............................................15

*United States v. Hayward*,
177 F. App'x 214 (3d Cir. 2006) ............................................15

*United States v. Ibanga,*
454 F. Supp. 2d 532 (E.D. Va. 2006), *vacated,*
271 F. App'x 298 (4th Cir. 2008) ............................................19

*United States v. Jones*,
194 F. App'x 196 (5th Cir. 2006) ............................................15

*United States v. Magallanez*,
408 F.3d 672 (10th Cir. 2005) ............................................16

*United States v. McIntosh*,
232 F. App'x 752 (10th Cir. 2007) ............................................15

*United States v. Mercado*,
474 F.3d 654 (9th Cir. 2007) ............................................15

*United States v. Neal*,
177 F. App'x 220 (3d Cir. 2006) ............................................16

iv

*United States v. Price*,
418 F.3d 771 (7th Cir. 2005) ...............................................................15

*United States v. Settles*,
530 F.3d 920 (D.C. Cir. 2008) ............................................................15

*United States v. Smith*,
261 F. App'x 921 (8th Cir. 2008) ......................................................15

*United States v. Vaughn*,
430 F.3d 518 (2d Cir. 2005) ...............................................................15

*United States v. Watts*,
519 U.S. 148 (1997) (per curiam).............................................*passim*

*United States v. White*,
551 F.3d 381 (6th Cir. 2008) ...............................................................15

*United States v. Yanotti*,
541 F.3d 112 (2d Cir. 2008) ...................................................................6

## Other Authorities

4 W. Blackstone, *Commentaries on the Laws of England* (1769)......................18, 19

Fed. R. App. P. 29 .......................................................................................1

Federal Sentencing Guideline § 1B1.2 ............................................3, 6, 7

## INTEREST OF *AMICUS CURIAE*

The National Association of Criminal Defense Lawyers ("NACDL") is a nonprofit corporation with a membership of more than 10,000 attorneys and 40,000 affiliate members in all fifty states.[1] NACDL was founded in 1958 to promote study and research in the field of criminal law, to disseminate and advance knowledge of the law in the area of criminal practice, and to encourage the integrity, independence and expertise of defense lawyers in criminal cases. NACDL seeks to defend individual liberties guaranteed by the Bill of Rights, and has a keen interest in ensuring that criminal proceedings are handled in a proper and fair manner. To promote these goals, NACDL has frequently appeared as *amicus curiae* before this Court and others around the country in cases concerning substantive criminal law and criminal procedure.

NACDL members include thousands of trial lawyers who are concerned, on a daily basis, with sentencing issues in courts throughout the United States. They have an abiding interest in ensuring the integrity of our judicial system through fair, reasonable and constitutionally authorized sentences.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a), all parties have consented to the filing of this *amicus* brief. Pursuant to Federal Rule of Appellate Procedure 29(c)(5), *Amicus Curiae* National Association of Criminal Defense Lawyers hereby certifies that no counsel for a party authored this brief in whole or in part; that no party or counsel for a party contributed money that was intended to fund preparation or submission of this brief; and that no person other than the *amicus curiae*, its members, and its counsel, contributed money that was intended to fund preparation or submission of this brief.

*Amicus* contends that allowing a sentencing court to contravene the jury's verdict by determining that an accused committed the same offenses that the jury acquitted him of committing, and then using those acquitted offense to enhance criminal sentences subverts the function of juries in our adversarial system of criminal justice in violation of the Sixth Amendment. Indeed, the disrespect for the jury's verdict evidenced by the sentence here is manifest: Virtually the entirety of the 188 month sentence imposed by the district court was based on offenses that were precisely the subject of the jury's acquittal. But for the trial court's reliance on the acquitted offenses, Appellant Trudeau's maximum sentencing range would have been roughly one-tenth of the sentence he actually received. If the Sixth Amendment jury guarantee means anything, it must deny a judge the authority to impose a sentence that is so fundamentally at odds with the jury's verdict.

## PRELIMINARY STATEMENT

NACDL agrees with the Statement of Jurisdiction, the Statement of the Issues, and the Statement of the Case in the Brief of Appellant. NACDL also agrees with Appellant's Statement of Relevant Facts and Standard of Review. In this case, however, NACDL's brief relies only on a few critical and seemingly undisputed facts:

- Appellant Trudeau was tried before a jury in September and October 2012 on a nine-count indictment;

2

- Jurors acquitted Appellant Trudeau of the 7 counts that involved millions in alleged losses;

- Jurors convicted Mr. Trudeau on the two remaining counts, which stemmed from a charge that Mr. Trudeau had fraudulently secured a loan from a friend, which he paid back in full with interest, resulting in no loss to the friend;

- The Sentencing Guidelines for the actual counts of conviction provided for an offense level of 7, which carries a recommended 8-14 month sentence;

- At sentencing, the district court found, by a preponderance of the evidence, that Appellant Trudeau had in fact convicted the offenses of which jurors acquitted him and, further contrary to the verdict, found that those acquitted offenses were objects of the jury's conspiracy conviction within the meaning of § 1B1.2 of the Federal Sentencing Guidelines;

- The district court then factored the acquitted offenses into Appellant Trudeau's guidelines calculation, using them as the basis for sentencing enhancements based on the amount of loss, the number of victims, and the size of the conspiracy;

- By including the acquitted offenses in her sentencing calculation, the lower court judge determined that Appellant Trudeau's offense level was

3

33; thus, the acquitted conduct made the offense level *26* levels higher than a calculation limited solely to facts found by the jury alone;

- The district court then imposed a sentence of 188 months imprisonment and a $ 4 million restitution award, which was also based entirely on losses caused by the acquitted conduct.

## SUMMARY OF THE ARGUMENT

The sentence below is fundamentally inconsistent with the Sixth Amendment jury trial guarantee, as articulated by the Supreme Court in a series cases, beginning in *Apprendi v. New Jersey,* 530 U.S. 466 (2000). In the sentencing context, these cases seek to ensure that "the judge's authority to sentence derives wholly from the jury's verdict." *Blakely v. Washington,* 542 U.S. 296, 306 (2004). This means, as the Supreme Court explained only two months ago in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), that the Sixth Amendment requires juries, not judges, to determine any fact that "both alters the legally prescribed range *and* does so in a way that aggravates the penalty." *Alleyne*, 133 S. Ct. at 2161 n.2 (emphasis in original).

The sentence here did not "derive[] wholly from the jury's verdict" – in fact that sentence openly repudiated the jury's verdict. And the judicial fact-finding by the sentencing court unquestionably altered – and aggravated – both the range of sentences to which Mr. Trudeau was exposed and his ultimate penalty. Under the

4

advisory sentencing guidelines, a sentence derived wholly from the jury's verdict would have been presumptively within an 8-14 month range. After considering the acquitted offenses, and calculating the sentence as though jurors returned convictions on all counts, the district court imposed a sentence of ten times the original 14-month maximum. There is no way to reconcile such a sentence with the Supreme Court's understanding of the Sixth Amendment as articulated in its *Apprendi* jurisprudence.

In imposing the sentence, the district court suggested her approach was required by *United States v. Watts*, 519 U.S. 148 (1997) (per curiam), this Court's precedents, and the Sentencing Guidelines. But the Supreme Court's *per curiam* decision in *Watts* did not require such a result, as it addressed only whether the consideration of acquitted conduct during sentencing violated the double jeopardy clause of the Fifth Amendment. *Watts* was not presented with, and did not consider, whether the reliance on acquitted offenses at sentencing conformed to Fifth and Sixth Amendment principles governing standards of proof and jury fact-finding – principles that have since been substantially developed by the Supreme Court in the *Apprendi* line of cases. These principles, and not the double jeopardy analysis of *Watts*, are the ones that now clearly govern questions over whether particular facts must be found by a jury for Sixth Amendment purposes.

5

Nonetheless, this Circuit and numerous others have construed *Watts* to govern. *See, e.g.*, *United States v. Yanotti*, 541 F.3d 112, 129 (2d Cir. 2008). But because the Supreme Court's *Apprendi* jurisprudence, and particularly its most recent decision in *Alleyne*, substantially undermine those decisions and call their continuing vitality into question, this Court has both the authority and the obligation to determine whether they have been superseded by intervening Supreme Court precedent. And this case, presenting a set of extreme facts in which the use of acquitted offenses appears to have resulted in at least a ten-fold increase in the sentence, provides not only an excellent vehicle for doing so but may demand such reexamination.

It is possible, though, and may be preferable, to decide this case on more narrow grounds. Despite the district court's assertion that the Sentencing Guidelines compelled the use of acquitted offenses in calculating Appellant Trudeau's sentence, that appears to be incorrect. The springboard for the district court's determination appears to be § 1B1.2(d) of the Guidelines, which directs the sentencing court to treat a conviction of conspiracy to commit multiple offenses as a "separate count of conspiracy for each offense the defendant conspired to commit." The district court read that provision as permitting an independent finding as to whether Mr. Trudeau committed the offenses alleged as part of the conspiracy without regard to the verdict, on a preponderance standard. And the

6

district court then used that opportunity to find that the acquitted offenses were all objects of the conspiracy count for Sentencing Guidelines purposes.

As Appellant demonstrates, Opening Brief at 19-25, a fair reading of the Guidelines does not support this result. Rather, the Guidelines seem to direct the sentencing court to make the multi-object conspiracy determination by examining the jury's verdict, not by making an independent and possibly contradictory conclusion. Indeed, the Guidelines seem to go out of their way to ensure that any § 1B1.2 determination is in harmony with the jury's verdict. While Appellant's interpretation thus seems to be compelled from the face of the provision itself, even were it not, such an interpretation should be compelled by the canon against constitutional doubt, under which a provision that is "'susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided,'" is construed in the way that avoids the constitutional issues. *Jones v. United States,* 526 U.S. 227, 239-40 (1999) (citation omitted). Construing the Guidelines provision relied on by the district court as requiring adherence to, and interpretation of, the jury's verdict would avoid the significant Fifth and Sixth Amendment questions raised by the district court's decision entirely.

Similarly, this Court could avoid the Sixth Amendment implications of the district court's sentence by invoking the substantive reasonableness review

7

described in the Supreme Court's post-*Booker* precedents. Such review could accept *arguendo* the premise that acquitted offenses may sometimes be considered at sentencing (a premise with which *amicus* obviously disagrees), but would then ask whether that sentence as a whole unreasonably relied not only on facts not found by the jury but found by the jury in Appellant's favor. *See Rita v. United States*, 551 U.S. 338, 365 (2007). In such circumstances, it would be appellant's burden to "demonstrate that his sentence . . . would not have been upheld but for the existence of a fact found by the sentencing judge and not by the jury." *Gall v. United States*, 552 U.S. 38, 60 (2007) (Scalia, J., concurring). That standard is easily met here. But for Judge Hall's consideration of acquitted offenses, Appellant's maximum sentence exposure, as authorized by the jury's verdict, would have been one-tenth of the sentence he received.

While *Amicus* flags these narrow issues as ways in which the Court could avoid revisiting its acquitted offenses precedents in light of intervening Supreme Court authority, this brief focuses solely on the *Apprendi/Alleyne* issues in the argument sections below. The more narrow grounds for decision are left to the briefs of the parties, as these issues are highly fact dependent and, while certainly important to Mr. Trudeau and his liberty interests, do not implicate the sort of broad constitutional concerns created by a sentence formulated as though the jury's verdict was beside the point.

## ARGUMENT

### I. THE SUPREME COURT'S *APPRENDI* JURISPRUDENCE, NOT ITS DECISION IN *WATTS,* GOVERNS SIXTH AMENDMENT QUESTIONS ABOUT THE PERMISSIBILITY OF JUDICIAL FACT-FINDING IN CRIMINAL CASES

On the constitutional issue presented, the fundamental dispute here concerns what Supreme Court precedent governs when questions arise about the permissibility of sentencing court determinations that a defendant in fact committed offenses that the jury acquitted him of committing, and then basing its sentence on this post-verdict factfinding. *Amicus* contends that the Supreme Court's *Apprendi* jurisprudence governs these questions.

This may not have been fully clear at the time *Apprendi* was decided, thirteen years ago, but it has become especially clear in light of the Supreme Court's most recent teaching on the subject. The Supreme Court's initial foray into this area, *Apprendi*, involved a situation in which the facts introduced at sentencing (involving the accused's racial bias) allowed the sentencing court to exceed what would otherwise have been the maximum statutory term of imprisonment. *Apprendi v. New* Jersey, 530 U.S. 466, 470 (2000). In defending the sentencing scheme, New Jersey argued that racial bias during the commission of the offense was merely a "sentencing factor," a term first used by the Supreme Court in *McMillan v. Pennsylvania*, 477 U.S. 79, 86 (1986), to describe facts not found by the jury that may be considered by a sentencing court because they are

9

not subject to the jury trial guarantee. *Apprendi,* 530 U.S. at 470. The Supreme Court rejected the argument, holding that any fact that increased the statutory maximum sentence constituted an "element" of the offense, which must be proven beyond a reasonable doubt to a jury in order to comply with the Fifth and Sixth Amendments. *Id.* at 490-92.

*Apprendi* thus defined an "element" with reference to an increase in the statutory maximum punishment, and purported to leave in place *McMillan*'s concept of "sentencing factors," which could be found by a judge even though, like the fact that increased the mandatory minimum punishment in *McMillan*, they significantly altered a defendant's sentencing exposure by aggravating the punishment. Two years later, in *Harris v. United States*, 536 U.S. 545, 557 (2002), the Supreme Court expressly reaffirmed *McMillan*'s paradigm, upholding a sentence in which the mandatory minimum had been enhanced by two years based on a trial court finding that the defendant had "brandished" the weapon used in connection with the crime. *Id.* at 551. The Court thus declined to apply the *Apprendi* rule to facts that increased the mandatory minimum because the sentence imposed was less than the statutory maximum authorized by the jury's verdict. *Id.* at 557.

After *Harris*, however, the Supreme Court expanded *Apprendi*'s reach to a sentencing court's determination of facts that did not, in and of themselves, cause

10

the sentence to exceed the statutory maximum. Thus, in *Blakely v. Washington,* 542 U.S. 296 (2004), the Supreme Court found that mandatory sentencing guidelines violated the *Apprendi* principle because "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* at 303-04 (quoting *Apprendi v. New Jersey,* 530 U.S. 466 , 488 (2000)) (emphasis in original). The Court supported this result by explaining that "the judge's authority to sentence derives wholly from the jury's verdict." *Blakely,* 542 U.S. at 306.

Later cases applied this principle in striking down the federal sentencing guidelines' authorization of an increased mandatory sentencing range based on judicial factfinding, *United States v. Booker*, 543 U.S. 220, 226-27 (2005), and in striking down a state guideline scheme that allow for an elevated "upper term" of imprisonment based on judicial fact-finding. *Cunningham v. California*, 549 U.S. 270, 274-75 (2007).

Last year, in *Southern Union Co. v. United States*, 132 S. Ct. 2344, 2350 (2012), the Court held that the *Apprendi* rule prohibits a district court from imposing a criminal fine exceeding the one authorized by the jury's verdict itself. The Sixth Amendment analysis focused on whether the sentencing court had impermissibly "inflict[ed] punishment that the jury's verdict alone [did] not

11

allow." *Id.* at 2350. As the Court explained, the Sixth Amendment's "core concern" is to reserve critical facts for determination by the jury, *id.*, and this concern applies equally to fines, incarceration and capital punishment. *Id.* at 2351.

Most recently, in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), the Supreme Court's *Apprendi* jurisprudence expressly discarded the original limitation of the doctrine to facts triggering a sentence that exceeds the statutory maximum, using an analysis that focuses on the whether the fact in question alters the sentencing range in a way that aggravates the punishment. In *Alleyne*, the Petitioner had been convicted of robbing a bank while using a firearm, but the jury had not found that the firearm was "brandished." 133 S. Ct. at 2155-56. The sentencing court had determined that the firearm was in fact "brandished," and this finding triggered a seven-year mandatory minimum sentence, although it did not affect the maximum penalty in any way. *Id.* In short, *Alleyne* presented precisely the same questions as *Harris* and *McMillan* – whether facts that trigger a mandatory minimum sentence must be found by a jury under the Sixth Amendment.

In answering the question "yes," – and overruling both *Harris* and *McMillan* – the Supreme Court first asked whether "a fact triggering a mandatory minimum alters the prescribed range of sentences to which a criminal defendant is exposed." *Alleyne*, 133 S. Ct. at 2160. As to this question, the Court determined that this sort

12

of factfinding did alter the prescribed sentencing range because "[but for a finding of brandishing, the penalty is five years to life in prison; with a finding of brandishing, the penalty becomes seven years to life." *Id.* The Court then asked whether "facts increasing the legally prescribed floor aggravate the punishment." *Id.* at 2161. On this question, the Court determined that "[e]levating the low-end of a sentencing range heightens the loss of liberty associated with the crime" and thus aggravates the penalty. *Id.*

The Supreme Court's most recent teaching in *Alleyne* thus completes the evolution in the Sixth Amendment analysis away from whether the fact allows the sentencing court to exceed a statutory maximum, and toward a focus on whether the fact in question alters the sentencing range in a way that aggravates the penalty. The district court's fact-finding here had exactly that result, increasing the sentencing range ten-fold and prompting a corresponding ten-fold aggravation in the penalty. Under *Alleyne*, this sort of judicial factfinding violates the Sixth Amendment.

Nor does it make any difference that the enhanced sentencing range attached to the district court's factfinding arises in an *advisory* guidelines system. Such a view cannot be reconciled with the Supreme Court's own descriptions of the scope of the jury's role. In *Blakely*, the Court rejected the State's claim that the statutory maximum for Sixth Amendment purposes was 10 years – *i.e.*, the maximum

13

penalty imposed for so-called Class B felonies under Washington law. 542 U.S. at 303. Rather, the Court explained that for *Apprendi* purposes "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* at 303-04 (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 488 (2000)) (emphasis in original).

Nor did *Booker* hold that under the admittedly "advisory" Guidelines, judicial fact-finding to impose a sentence within the statutory maximum set forth in the United States Code does not violate the Sixth Amendment. Instead, in *Booker*, the Court held that "when a trial judge exercises his discretion to select a specific sentence *within a defined range*, the defendant has no right to a jury determination of the facts that the judge deems relevant." 543 U.S. at 233 (emphasis added). Thus, if the jury's fact-finding supports imposition of a sentence within a defined range, then the Sixth Amendment will not stand as an obstacle to the imposition of a sentence within that "defined range." But "[w]hen a judge inflicts punishment that the jury's verdict *alone* does not allow, the jury has not found all the facts which the law makes essential to the punishment and the judge exceeds his proper authority." *Blakely*, 542 U.S. at 304 (internal quotations and citations omitted; emphasis added). The focus, then, is on whether the jury's verdict authorized the sentencing range, and here it plainly did not.

14

## II. APPLICATION OF THE CONTROLLING SIXTH AMENDMENT ANALYSIS FROM *APPRENDI* IS NOT FORECLOSED BY PRECEDENT

Because the controlling Sixth Amendment analysis is so clear, the only real

question is whether it is foreclosed by the precedents of the Supreme Court and/or

this Court. This Court, as well as the court below, has taken the position that

another line of Supreme Court precedent controls here, specifically the Supreme

Court's *per curiam* decision in *United States v. Watts*, 519 U.S. 148 (1997).[2] As

this Court explained in *United States v. Vaughn*, 430 F.3d 518, 526 (2d Cir. 2005)

in refusing to grapple with the tension that existed at the time between *Apprendi*

and *Watts:* "[c]ourts of Appeal should continue to follow directly controlling

---

[2] This Court is not alone. Every other federal appellate court to address the issue has agreed. *See e.g., United States v. White*, 551 F.3d 381, 386 (6th Cir. 2008) (*en banc*); *United States v. Smith*, 261 F. App'x 921 (8th Cir. 2008); *United States v. Mercado*, 474 F.3d 654, 657 (9th Cir. 2007) (The "core principle of *Watts* lives on and [a] district court [may] constitutionally consider . . . acquitted conduct"); *United States v. McIntosh*, 232 F. App'x 752, 757 (10th Cir. 2007); *United States v. Vaughn*, 430 F.3d 518 (2d Cir. 2005); *United States v. Settles*, 530 F.3d 920 (D.C. Cir. 2008); *United States v. Dorcely*, 454 F.3d 366, 371 (D.C. Cir. 2006); *United States v. Gobbi*, 471 F.3d 302, 314 (1st Cir. 2006) ("Post-*Booker*, the law has not changed . . . ; acquitted conduct, if proved by a preponderance of the evidence, still may form the basis for a sentencing enhancement"); *United States v. Jones*, 194 F. App'x 196, 197-98 (5th Cir. 2006); *United States v. Hayward*, 177 F. App'x 214, 215 (3d Cir. 2006); *United States v. Ashworth*, 139 F. App'x 525, 527 (4th Cir. 2005) (*per curiam*); *United States v. Price*, 418 F.3d 771, 778-88 (7th Cir. 2005).

precedent even where that decision appears to rest on reasons rejected in another line of decisions."[3]

The rulings in this context are puzzling because *United States v. Watts* is readily distinguishable: it merely held that a sentencing court's consideration of acquitted offenses was not a violation of the Fifth Amendment's double jeopardy clause. No Sixth Amendment challenge was raised or considered in *Watts*. To be sure, "[i]f a precedent of th[e] [Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to th[e] [Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989). But if that rule ever applied, it could not do so after the Supreme Court's express denial, in *Booker*, of the direct application of *Watts*. *Booker*, 543 U.S. at 240. Specifically, in *Booker*, the Court noted this limitation on the scope of *Watts*, explaining that there was no "contention [in *Watts*] that the sentencing enhancement had exceeded the sentence authorized by the jury verdict in violation of the Sixth Amendment." *United States v. Booker*, 543 U.S. 220, 240 (2005). The Court continued, "*Watts* . . . presented a very narrow question regarding the interaction of the Guidelines

---

[3] *See also United States v. Magallanez*, 408 F.3d 672, 685 n.1 (10th Cir. 2005) ("[I]t is not the place of an inferior court to overrule [*Watts*]"); *United States v. Neal*, 177 F. App'x 220, 220 n.3 (3d Cir. 2006) ("[W]hether *Watts* survives *Booker* is not for a federal court of appeals to decide").

with the Double Jeopardy Clause, and did not even have the benefit of full briefing or oral argument. It is unsurprising that we failed to consider fully the issues presented to us." *Id.* at 240 n.4.

Not only was *Watts'* scope limited in precisely this manner, its analysis was also infected by a reliance on *McMillan*'s paradigm, in which sentencing courts could determine a wide range of "sentencing factors" after the verdict, even if doing so enhanced the sentencing range and aggravated the ultimate penalty. *Watts*, 519 U.S. at 156. Such analysis was highly doubtful after *Apprendi*, and it has become unsustainable now that *Alleyne* has expressly overruled *McMillan.* The Supreme Court's recent disavowal of one of *Watts*' pillars is yet another reason that it can have *no* Sixth Amendment force in the post-*Apprendi* world.

For many of these same reasons, this Court is not bound by earlier pre-*Alleyne* precedent from this Circuit. This Court, like every other Circuit, allows a subsequent panel may to reconsider a prior panel's holding "where there has been an intervening Supreme Court decision that casts doubt on our controlling precedent." *Union of Needletrades, Indus. & Textile Emps. v. INS,* 336 F.3d 200, 210 (2d Cir. 2003). The Supreme Court's recent decision in *Alleyne* represents precisely that sort of intervening decision, and its overruling of *McMillan,* as well as its reformulation of the Sixth Amendment standards away from the "statutory

17

maximums" that were the focus on *Apprendi*, cast doubt on this Court's precedents and thus permit this Court to consider these matters anew.

## III. THIS CASE PRESENTS AN EXCELLENT VEHICLE FOR REVISITING THIS COURT'S ACQUITTED CONDUCT JURISPRUDENCE BECAUSE IT HIGHLIGHTS THE IMPORTANT POLICY INTERESTS THAT ARE IMPLICATED WHEN A SENTENCE EFFECTIVELY NULLIFIES A JURY'S VERDICT

Throughout the Supreme Court's *Apprendi* jurisprudence, the most dominant theme is the overarching purpose of the Sixth Amendment:  ensuring that the jury trial is not "a mere preliminary to a judicial inquisition into the facts of the crime the State *actually* seeks to punish." *Blakely v. Washington*, 542 U.S. 296, 306-07 (2004).  As even the dissenting opinion acknowledged in *Alleyne*, "the Framers clearly envisioned a more robust role for the jury.  They appreciated the danger inherent in allowing justices named by the crown to imprison, dispatch or exile any many that was obnoxious to the government, by an instant declaration, that such is their will and their pleasure."  *Alleyne v. United* States, 133 S. Ct. 2151, 2169 (2013) (Roberts, C.J., dissenting) (quoting in part, 4 W. Blackstone, *Commentaries on the Laws of England* 343 (1769)).

This case presents a scenario that stands these notions on their head – one in which the jury trial was indisputably a "mere preliminary" to a judicial inquisition of the facts that State actually sought to punish.  The Framers who adopted the Sixth Amendment could not have intended to guard against Governmental

18

oppression through criminal juries with ultimate power to confirm or reject the truth of every accusation, and to partially acquit to lessen unduly harsh punishment, *see Jones v. United States*, 526 U.S. 227, 247 (1999)—only to allow a judge to then effectively nullify the jury's acquittal. Doing so eviscerates the "fundamental reservation of power" in the jury and prevents it from "exercis[ing] the control that the Framers intended." *Blakely*, 542 U.S. at 306. Like other "'inroads upon this sacred bulwark of the nation,'" the use of acquitted crimes to calculate the guideline range is "'fundamentally opposite to the spirit of our constitution.'" *Booker*, 543 U.S. at 244 (quoting 4 W. Blackstone, *Commentaries on the Laws of England* 343-44 (1769)).

Such a disconnect breeds disrespect for our legal system as a whole. The Sixth Amendment on its face, and as construed by the *Apprendi* cases, envision jurors serving as a critical protection against judicial overreaching. But cases like this one give lie to such a notion, and at the same time disrespect the jurors' service to their community.[4] Such verdicts also vastly increase the power of the prosecutor

---

[4] "It would only confirm the public's darkest suspicions to sentence a man to an extra ten years in prison for a crime that a jury found he did not commit." *United States v. Ibanga,* 454 F. Supp. 2d 532, 539 (E.D. Va. 2006) ("[M]ost people would be shocked to find out that even United States citizens can be (and routinely are) punished for crimes of which they were acquitted"), *vacated*, 271 F. App'x 298 (4th Cir. 2008). *See also United States v. Canania,* 532 F.3d 764, 778 & n.4 (8th Cir. 2008) (Bright, J., concurring) (quoting a letter from a juror as evidence that the use of acquitted conduct is perceived as unfair and "wonder[ing] what the man on the street might say about this practice of allowing a prosecutor and judge to say

versus the individual, giving prosecutors substantial incentives to take even weaker cases to trial, while at the same time inducing defendants to accept unjust plea bargains because the stakes of fighting unjust charges are just too high when a conviction on any count (and even a far lesser one, as occurred here) will allow a court to sentence on all counts. In short, important public policy interests attach to any judicial decision to effectively nullify a jury's verdict. Because those interests are at their zenith in this case, where the sentence is calculated in a way that nullifies the jury's acquittals on 7 of 9 of the counts, it provides an excellent vehicle for this Court to revisit the question of whether such a practice comports with the Sixth Amendment as informed by intervening Supreme Court precedent in *Alleyne*.

---

that a jury verdict of 'not guilty' for practical purposes may not mean a thing"); *United States v. Coleman,* 370 F. Supp. 2d 661, 671 n.14 (S.D. Ohio 2005), *aff'd in part, vacated in part, and remanded on other grounds, United States v. Kaminski*, 501 F.3d 655 (6th Cir. 2007) (quoting *United States v. Frias*, 39 F.3d 391, 393 (2d Cir. 1994) ("A layperson would undoubtedly be revolted by the idea that, for example, a 'person's sentence for crimes of which he has been convicted may be multiplied fourfold by taking into account conduct of which he has been acquitted.'")

## <u>CONCLUSION</u>

For the foregoing reasons and those advanced by Appellant, the Court

should reverse the district court's judgment and remand for resentencing.

August 16, 2013                    Respectfully submitted,

<u>/s/Timothy P. O'Toole</u>
Timothy P. O'Toole
Miller & Chevalier Chartered
655 Fifteenth St., NW
Suite 900
Washington, DC 20005
Tel: (202) 626-5800
Fax.: (202) 626-5801
Email: totoole@milchev.com

Richard D. Willstatter
Vice-Chair, Amicus Curiae Committee
National Association of Criminal Defense
Lawyers
200 Mamaroneck Avenue, Suite 605
White Plains, NY 10601
Tel.: (914) 948-5656
Fax: (914) 948-8730
Email: willstatter@msn.com

Attorneys for *Amicus Curiae*
National Association of Criminal Defense
Lawyers

21

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

**Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

<u>XX</u> this brief contains 4,903 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

___ this brief uses a monospaced typeface and contains [*state the number of lines*] of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because:

<u>XX</u> this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point font in Times New Roman, or

___ this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

_____August 16, 2013_____          /s/ Timothy P. O'Toole_____
           Date                         Timothy P. O'Toole

## CERTIFICATE OF SERVICE

I hereby certify that, on this 16th day of August, 2013, I caused this **Brief of National Association of Criminal Defense Lawyers as *Amicus Curiae* In Support of Appellant** to be filed via the CM/ECF filing system, which will then send notification of such filing to all counsel of record.


     /s/ Timothy P. O'Toole

     Timothy P. O'Toole